975 F.2d 611
 141 L.R.R.M. (BNA) 2326, 61 USLW 2220,
123 Lab.Cas. P 10,363
 UNITED ASSOCIATION OF JOURNEYMEN & APPRENTICES OF The
PLUMBING & PIPEFITTING INDUSTRY, STEAMFITTERS and
REFRIGERATION UNION, LOCAL 342; AFL-CIO; U.A. Local No.
159, 342, 343 and 444 Combined Pension Trust Fund; U.A.
Local No. 159, 342, 343 and 444 Combined Health and Welfare
Trust Fund; and U.A. Local No. 342 Journeymen and
Apprentice Training Trust Fund and Doyle Williams,
Plaintiffs-Appellants,
v.
VALLEY ENGINEERS; Vulcan Construction & Maintenance, Inc.;
Thomas R. Flynn, Defendants-Appellees.
 No. 90-16495.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.
Decided Sept. 15, 1992.
As Amended Oct. 16, 1992.
 
 John L. Anderson, Maxine Auerbach, Neyhart, Anderson, Reilly & Freitas, San Francisco, Cal., for plaintiffs-appellants.
 Charles S. Birenbaum, Scott L. Gardner, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendants-appellees Valley Engineers and Thomas R. Flynn.
 Michael J. Hogan, Spencer H. Hipp, Littler, Mendelson, Fastiff & Tichy, Fresno, Cal., for defendant-appellee Vulcan Construction & Maintenance.
 Appeal from the United States District Court for the Northern District of California.
 Before: FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 KOZINSKI, Circuit Judge.
 
 
 1
 We consider whether the district court is entitled to rely on an NLRB alter ego or single employer determination when the same issue regarding the employer's status is presented to it in a suit brought under Section 301 of the Labor Management Relations Act.
 
 BACKGROUND
 
 2
 Valley Engineers entered a collective bargaining agreement with Local 342; Vulcan Construction and Engineers, which is under the same ownership as Valley, has not. Plaintiffs--Local 342, three employee pension funds and Doyle Williams, a trustee of those funds--sued both companies and their president, Thomas R. Flynn, in federal district court under section 301 of the Labor-Management Relations Act[1] and ERISA section 502.[2] They sought to extend Valley's collective bargaining agreement to Vulcan, claiming illegal double-breasting.[3] Plaintiffs needed to prove that the companies were either a "single employer" or "alter egos"--the two situations where double-breasting is an unfair labor practice. Carpenters' Local No. 1478 v. Stevens, 743 F.2d 1271, 1276 (9th Cir.1984), cert. denied, 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985).
 
 
 3
 Knowing that the NLRB had previously determined that Valley and Vulcan were neither a single employer nor alter egos, Valley petitioned the Regional Director for another ruling on those very questions. After reviewing new evidence presented by Local 342, the Regional Director again concluded that Valley and Vulcan were neither alter egos nor a single employer. Local 342 did not seek review of the Regional Director's decision and the decision therefore became final 14 days later. At the employer's request, the district court then stayed the suit, giving defendants time to prepare a motion for summary judgment. It then granted that motion. The union appeals.
 
 DISCUSSION
 
 4
 We review summary judgment de novo. See, e.g., Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We will affirm if the district court's decision is supported by any grounds fairly presented by the record. Jackson v. Southern Cal. Gas Co., 881 F.2d 638, 643 (9th Cir.1989).
 
 
 5
 A. If a district court suit and a simultaneous administrative proceeding raise identical questions, the court can stay the suit, enjoin the parties from proceeding in the other forum or allow both actions to proceed. The third alternative effectively creates a race, needlessly multiplying the burden and expense of litigation, while generating uncertainty about which determination will be deemed conclusive. When a court becomes aware that litigation pending in another forum implicates a material aspect of the litigation before it, therefore, the court should ordinarily choose between the first and second options, which requires it to determine which is the more appropriate forum for resolving that aspect of the dispute.
 
 
 6
 The NLRB has exclusive jurisdiction over some labor law questions and primary jurisdiction over others. In the areas of the NLRB's primary jurisdiction, the district courts must tread lightly.[4] "[T]he doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board." Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Dist., 689 F.2d 1339, 1342 (9th Cir.1982).
 
 
 7
 Representational issues fall within the NLRB's primary jurisdiction. Local 3-193 v. Ketchikan Pulp Co., 611 F.2d 1295, 1298 (9th Cir.1980). Thus "[w]e have recognized repeatedly that courts must refuse to exercise jurisdiction over claims involving representational issues." Hotel and Restaurant Employees Union v. Marriott Corp., 961 F.2d 1464, 1468 (9th Cir.1992). This deference is rooted in both the superior expertise of the Board, Local 1547, Int'l Bhd. of Elec. Workers v. Local 959, Int'l Bhd. of Teamsters, 507 F.2d 872, 877 (9th Cir.1975), and the incompatibility of "the orderly function of the process of judicial review" with initial district court consideration of representational issues. South Prairie Constr. Co. v. Local No. 627, Int'l Union of Operating Eng'r, 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (citation omitted).
 
 
 8
 That the federal courts and the Board have concurrent jurisdiction over section 301 cases, see Brotherhood of Teamsters v. California Consolidators, Inc., 693 F.2d 81, 83 (9th Cir.1982), cert. denied, 469 U.S. 887, 105 S.Ct. 263, 83 L.Ed.2d 199 (1984), complicates the analysis somewhat, but does not change the outcome. District courts must continue to defer when, on close examination, section 301 cases fall within the NLRB's primary jurisdiction. In this regard, we have noted the difference between those section 301 cases which turn on our interpretation of the contract and those which, stripped to essentials, are representation cases. See Cappa v. Wiseman, 659 F.2d 957, 958-59 (9th Cir.1981). "[C]ongress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units." Ketchikan Pulp, 611 F.2d at 1301. "[T]he exception to the primary jurisdiction doctrine provided by section 301 was designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement." Custom Auto Glass, 689 F.2d at 1342-43 (original emphasis). Thus the court should look at whether "the major issues to be decided ... can be characterized as primarily representational or primarily contractual." California Consolidators, 693 F.2d at 83 n. 4 (quoting Local 204, Int'l Bhd. of Elec. Workers v. Iowa Elec. Light & Power Co., 668 F.2d 413, 419 (8th Cir.1982)). Where "[t]he interpretation of the contract depends entirely on the resolution of the question of whom the union represents," the matter is "properly left to the Board." Cappa, 659 F.2d at 960 (Fletcher, J., dissenting); see also Int'l Bhd. of Elec. Workers, Local 532 v. Brink Constr. Co., 825 F.2d 207, 213 (9th Cir.1987) (affirming a district court decision not to stay a section 301 action because that suit "addressed no issue within the NLRB's primary jurisdiction").[5]
 
 
 9
 This case falls on the "primarily representational," rather than "primarily contractual," side of the line. When a union makes an alter ego/single employer claim its suit necessarily addresses issues within the NLRB's primary jurisdiction. It is true that the exclusive jurisdiction of the Board relates only to unit clarifications, in which "the critical consideration for the NLRB [is] 'whether the employees in the unit share a "community of interest." ' " Cappa, 659 F.2d at 959 (quoting Sohio Petroleum Co. v. NLRB, 625 F.2d 223, 225 (9th Cir.1980)). A decision whether two companies are alter egos or a single employer is not, in itself, a unit clarification. But a single employer finding must be supplemented by a unit clarification before the terms of a collective bargaining agreement can be imposed upon a nonsigning entity; only the Board can conduct this inquiry. NLRB v. Big Bear Supermarkets, 640 F.2d 924, 931 n. 7 (9th Cir.), cert. denied, 449 U.S. 919, 101 S.Ct. 318, 66 L.Ed.2d 147 (1980). Moreover, alter ego and single employer findings depend on substantially the same considerations.[6] Consequently, when a union makes alter ego and single employer claims, the only way to avoid either duplicative or bifurcated litigation is to let the Board settle both questions, if it is feasible for it to do so.[7]
 
 
 10
 B. In this case, the district court was asked to stay the union's suit pending completion of the Regional Director's report, but had no occasion to act on that request. In keeping with one of the "leading federal policies in this area [of] 'relatively rapid disposition of labor disputes,' " United Parcel Serv. v. Mitchell, 451 U.S. 56, 63, 101 S.Ct. 1559, 1564, 67 L.Ed.2d 732 (1981) (citation omitted), the Regional Director released his findings before the district court could act on the stay request.[8]
 
 
 11
 When the district court finally granted the stay, the Board had resolved the key issue between the parties, leaving nothing for the court to do. Letting the suit go forward would have produced conflicting or redundant judgments, and a great deal of wasted effort and expense. See Central Valley Typographical Union v. McClatchy Newspapers, 762 F.2d 741, 749 (9th Cir.1985) (noting importance of avoiding inconsistent judgments in representation cases). Indeed, once the Regional Director's report became final, the union's suit amounted to a collateral attack on that determination. We have warned parties against "attempting an end run around [the NLRB] under the guise of contract interpretation." Ketchikan Pulp, 611 F.2d at 1299; see also Amalgamated Clothing & Textile Workers Union v. Facetglas, Inc., 845 F.2d 1250, 1252 (4th Cir.1988) (cautioning against allowing parties to use section 301 to "circumvent an existing Board disposition of the merits of their representational claims"). We are also mindful that NLRB regulations call for appeals to follow a specified route within a specified period of time. Those procedures become meaningless if the same issue can be raised in another proceeding pursuant to a different set of rules. Cf. Sander 966 F.2d at 502-03 (warning against allowing collateral attacks, albeit presented as separate claims, to undermine final adjudications); Corey v. New York Stock Exchange, 691 F.2d 1205, 1213 (6th Cir.1982) (altering the relief sought will "not transform ... an impermissible collateral attack into a proper independent direct action").
 
 
 12
 C. Of the plaintiffs in district court, only local 342 was a party to the proceeding before the Regional Director. We must determine whether Local 342 has a sufficient identity of interest with the trust funds and Williams so that the prior determinations as to Local 342 may bind them. The general rule is that a litigant is not bound by a prior decision in a proceeding to which it was not a party. Hansberry v. Lee, 311 U.S. 32, 40, 61 S.Ct. 115, 117, 85 L.Ed. 22 (1940). Where, however, "a person, although not a party, has his interests adequately represented by someone with the same interests who is a party," an earlier judgment will bind him in subsequent proceedings. Martin v. Wilks, 490 U.S. 755, 762 n. 2, 109 S.Ct. 2180, 2184 n. 2, 104 L.Ed.2d 835 (1989). This is a mixed question of law and fact, subject to de novo review, United States v. Geophysical Corp., 732 F.2d 693, 697 (9th Cir.1984), that "may necessitate resolution of factual questions." Harbeson v. Parke Davis, Inc., 746 F.2d 517, 520 (9th Cir.1984).
 
 
 13
 The district court found that "Local 342 is so closely aligned with the interests of its business manager, Doyle Williams, and with the interests of the trust funds which benefit its members that it would not violate the guarantees of due process to bind all plaintiffs to the Regional Director's March, 20, 1990 decision." ER, No. 55, at 5. Appellants were given a chance to provide evidence that the interests of the union and the trust funds differed--and that the latter were therefore not adequately represented before the NLRB--but failed to do so. As the non-moving parties on summary judgment, the trust funds and Williams had a responsibility to come forward with evidence disputing the commonality of their interest with Local 342. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because they did not carry this burden, we accept as true the facts the district court relied on in deciding the summary judgment motion. We therefore conclude that there was a sufficient commonality of interest to bind the plaintiffs in this action.
 
 
 14
 D. Valley and Flynn both ask for attorney's fees on appeal. They cite no authority justifying such an award as a matter of course, and we do not find the appeal to be frivolous. The request for fees is therefore denied.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Section 301 provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185
 
 
 [2]
 Section 502 provides for civil enforcement of ERISA claims, including those for unpaid contributions. 29 U.S.C. § 1132
 
 
 [3]
 Double-breasting refers to the simultaneous operation of union and non-union companies by one owner
 
 
 [4]
 Some of the substantive confusion over these doctrines may be traceable to linguistic confusion, and vice versa: We have previously referred to the Board's "primary exclusive jurisdiction," Seay v. McDonnell Douglas Corp., 427 F.2d 996, 1001 (9th Cir.1970), and "exclusive primary jurisdiction," Rozay's Transfer v. Local Freight Drivers, 850 F.2d 1321, 1325 (9th Cir.1988)
 
 
 [5]
 At oral argument, appellants' counsel advanced an entirely new and unbriefed theory: That, even if Valley and Vulcan were not a single employer or alter egos, appellants were owed contributions because work that should have gone to Valley's workers went instead to Vulcan's. Because we do not entertain contentions made for the first time at oral argument, we express no opinion on this theory
 Local 342 has also argued that because the district court's stay halted discovery, it was not able to obtain evidence it needed to make its case to the Regional Director. This claim makes no sense, because the regional director's finding preceded the stay. The relevant question is whether the Regional Director adhered to NLRB procedures, and the place to answer that question is on appeal to the Board. See Sander v. Weyerhaeuser Co., 966 F.2d 501, 503 (9th Cir.1992) (pointing out dangers of "unending collateral attacks on the results of adjudications on grounds that some piece of discovery or another was withheld").
 
 
 [6]
 The four common factors are: Interrelation of operations, common management, centralized control of labor relations and common ownership. A fifth factor, considered only in alter ego cases, is the intent of the employer. Stevens, 743 F.2d at 1276-77
 
 
 [7]
 If the single employer/alter ego question is brought to the Board late in the district court litigation--when the court is close to resolving the issue--the court might have reason for refusing to stay its proceeding
 
 
 [8]
 The defendants filed a motion to stay the federal proceedings on March 13, 1990. ER, No. 33, at 2. The Regional Director issued his report, 32-UC-250, on March 20, 1990. ER, No. 36. Pursuant to Board rules, the union had 14 days to appeal the decision. 29 C.F.R. § 102.67. Because there was no appeal, the ruling became final on April 3, 1990. Id. The district court granted the motion to stay the action on April 13, 1990, ER, No. 33, by which time a second decision on the merits would have been senseless